UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

SALLY J. DENMAN,

           Debtor.

_____/

JEFF A. MOYER, chapter 7 trustee,

           Plaintiff,

V.

SALLY J. DENMAN,

           Defendant.

_____/

Case No. DG 15-00760
Hon. Scott W. Dales
Chapter 7

Adversary Pro. No. 16-80273

MEMORANDUM OF DECISION & ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                  Chief United States Bankruptcy Judge

Chapter 7 trustee Jeff A. Moyer (the "Plaintiff") filed a two-count complaint against Sally J. Denman (the "Defendant"), seeking to revoke her discharge and recover a money judgment. Both counts relate to the Defendant's alleged failure to comply with the Order Directing Turnover dated May 21, 2016 (the "Turnover Order," Base Case ECF No. 20), which required the Defendant to turn over her tax returns and non-exempt tax refunds in the amount of $1,736.00.

The Defendant did not answer the complaint, and the Clerk entered the default on January 10, 2017. Fed. R. Civ. P. 55(a). The Plaintiff promptly made a motion for default judgment (the "Motion," ECF No. 6), supported by an affidavit under the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043.

On March 21, 2017 in Grand Rapids, Michigan, the court held a hearing on the Plaintiff's Motion pursuant to Fed. R. Civ. P 55(b)(2). The Plaintiff appeared but the Defendant did not. After discussing whether the well-pleaded allegations within the complaint established a right to relief, the court took the matter under advisement.

A bankruptcy court may deny or revoke a discharge if a debtor refuses to obey a lawful order, not if she simply fails to do so. 11 U.S.C. § 727(a)(6). "Refusal" connotes contempt; failure suggests ignorance or inability. *Yoppolo v. Freeman (In re Freeman)*, 293 B.R. 413, 415 (Bankr. N.D. Ohio 2002) ("a debtor will be found to have 'refused' to obey a court order under § 727(a)(6)(A), when the debtor's inaction would give rise to a charge of civil contempt").

Courts considering denial or revocation of discharge based on a debtor's alleged refusal to obey an order employ a burden-shifting analysis:

> The party objecting to discharge under this provision must demonstrate that "the debtor received the order in question and failed to comply with its terms." The debtor then bears the burden of explaining his non-compliance. Ultimately, the court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful.

*Standiferd v. United States Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) (citations omitted) (citing *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008)). This analysis governs revocation as well as denial of discharge.

The question of whether to revoke the Defendant's discharge is a close one, given the default context in which the Plaintiff presents it, the minimal factual allegations implying, but not stating, that the Defendant refused to obey the Turnover Order, and the fact that the Defendant has led a peripatetic existence. These factors make it difficult to determine whether the Defendant's non-compliance with the Turnover Order was in fact willful, as the case law requires.

Although the allegations within the complaint fall short of directly stating that the Defendant received the Turnover Order, the Plaintiff's statements at the default hearing filled the gap. The court finds that she received a copy of the Turnover Order. With respect to her alleged failure to comply, the complaint clearly states that she did not, and she admitted this well-pleaded allegation by failing to deny it. Fed. R. Civ. P. 8(b)(6).

Under the authorities cited above, the burden therefore shifts to the Defendant to explain her non-compliance, which she has not done because she has not answered the complaint. Given the stakes involved -- in effect, the revival of $130,000.00 in scheduled (and currently discharged) debts -- the court struggles to understand her failure to answer the complaint, and hesitates to impose the draconian sanction of revocation, essentially for her failure to pay $1,736.00 in non-exempt tax refunds.

Perhaps, despite service of the summons and complaint at the address she listed on her petition, she is not aware of this adversary proceeding. Indeed, it appears that the Defendant has resided at numerous addresses over the last few years. *See* Voluntary Petition (Base Case ECF No. 1, listing address in Belding, Michigan); Proof of Claim No. 2-1 (utility document referencing an address in Lakeview, Michigan); Claim No. 5 (Sprint bill for an address in White Cloud, Michigan); Proof of Claim No. 6 (insurance invoice referencing an address in Essexville, Michigan). The Plaintiff must have had some doubts, too, because he served the Defendant at two addresses, the address on the base case docket and an address in Stanton, Michigan. For its part, after the default hearing, the court conducted an internet search and uncovered a few more addresses, including a post office box and street address in Sheridan, Michigan.

In the court's experience, many debtors mistakenly believe that their cases are over when their discharges are entered. It is certainly conceivable that after the Defendant received her

discharge on June 1, 2015, she moved on, literally and figuratively, and neglected to file a change of address form with the court.

The court, however, cannot fault the Plaintiff for serving the summons and complaint upon the Defendant at the address listed on the docket, given a debtor's obligation to update the court's records with any change of address. *See* Fed. R. Bankr. P. 4002(a)(5). Trustees, the court, and others, must be able to rely on the information included within the docket. Although it would not be surprising to learn that the addresses where the Plaintiff served the Defendant were stale, the court should not speculate or conclude that service on a debtor at the address on the court's own records is defective.

Because the Defendant has not answered the properly-served complaint, she has not offered an explanation for her non-compliance with the Turnover Order. Therefore, although the question is close, the court finds that the Defendant refused to obey the Turnover Order. The Plaintiff is entitled to relief on Count I of his complaint.

With respect to Count II, through which the Plaintiff seeks a money judgment for the amount of the non-exempt tax refunds identified in the Turnover Order, the Plaintiff is also entitled to relief. Although the Plaintiff might have pursued collection based on the Turnover Order itself without awaiting entry of a judgment in an adversary proceeding,[1] the court will enter judgment on Count II to assist the Plaintiff in marshaling the assets of the bankruptcy estate, given the confusion about garnishment just noted.

---

[1] At the default hearing, the Plaintiff advised the court that he has been unable to enforce the Turnover Order as a money judgment because (he said) the Clerk does not issue garnishment writs based on turnover orders, but instead requires a formal judgment in an adversary proceeding. After checking with the Clerk's office, it appears the Plaintiff is misinformed. The policy of that office is to issue garnishment writs based on any appealable order directing the payment of a sum certain, even an order resolving a contested matter. *See* Fed. R. Bankr. P. 9001(7) (defining "judgment" as "any appealable order") and 9014(c) (incorporating Fed. R. Bankr. P. 7069, and Fed. R. Civ. P. 69, into contested matters).

For the foregoing reasons, the court will grant the Motion, and direct the Plaintiff to submit a judgment on the court's official form, within 21 days after entry of this Memorandum of Decision & Order.  Fed. R. Bankr. P. 7058 (incorporating "separate document" requirement of Fed. R. Civ. P. 58(a)).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED and the Plaintiff shall submit a judgment consistent with the court's decision within 21 days after entry of this Memorandum of Decision & Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision & Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jeff A. Moyer, Esq., the United States Trustee, and Sally J. Denman by first class mail at the following addresses:

| | |
|---|---|
| Sally J. Denman<br>518 Eager Street<br>Belding, MI 48809 | Sally J. Denman<br>P.O. Box 456<br>Sheridan, MI 48884 |
| Sally J. Denman<br>2282 Rough Drive<br>Stanton, MI 48888 | Sally J. Denman<br>2511 W Muskrat Road<br>Sheridan MI 48884-9371 |

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 24, 2017**



Scott W. Dales
United States Bankruptcy Judge